# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Richard A. Butts, individually and on behalf of all others similarly situated, Respondent,

v.

Miriam Mace, in her official capacity as Treasurer of Georgetown County, and Georgetown County, South Carolina, Appellants.

AND

Carroll Brown, individually and on behalf of all others similarly situated, Respondent,

v.

Harold M. Young, in his official capacity as Orangeburg County Administrator; Matt Stokes, in his official capacity as Orangeburg County Treasurer; Orangeburg County; and Orangeburg County Council, Appellants.

Appellate Case No. 2025-000207

———————

Appeal From Orangeburg County
Roger M. Young, Sr., Circuit Court Judge

———————

Opinion No. 28331
Heard January 13, 2026 – Filed May 13, 2026

———————

**REVERSED AND REMANDED**

———————

H. Thomas Morgan, Jr., of Smith Robinson Holler DuBose Morgan, LLC, of Camden; Austin Tyler Reed and Frederick Newman Hanna, Jr., both of Smith Robinson Holler DuBose Morgan, LLC, of Columbia; Andrew F. Lindemann, of Lindemann Law Firm, P.A., of Columbia; and Bradley Truman Farrar, of Aiken, all for Appellants.

Charles J. Hodge, of Hodge Law, PC, of Spartanburg; Clayton B. McCullough and Ross A. Appel, both of McCullough Khan, LLC, of Mt. Pleasant; David R. Price, Jr. and Samuel Barton Tooker, both of David R. Price, Jr., P.A., of Greenville; Robert S. Wood, Thomas Christopher Tuck, and Theodore Augustus Constantine Hargrove, II, all of Rogers, Patrick, Westbrook & Brickman, LLC, of Mt. Pleasant; William Camden Lewis, of Richardson, Thomas, Haltiwanger, Moore & Lewis, of Columbia; Brady Ryan Thomas and Grace Madeline Babcock, both of Richardson Thomas, LLC, of Columbia; Terry E. Richardson, Jr., of Richardson Thomas, LLC, of Barnwell; and Timothy Ryan Langley, of Langley Law Firm, of Spartanburg, all for Respondents.

---

**JUSTICE VERDIN:** In these consolidated cases, the plaintiffs challenge the validity of road maintenance fees imposed by Orangeburg and Georgetown Counties. In the Orangeburg County Action, Caroll Brown, individually and on behalf of a class (*Brown* Respondents), brought an action against Harold M. Young, in his official capacity as Orangeburg County Administrator; Matt Stokes, in his official capacity as Orangeburg County Treasurer; Orangeburg County; and Orangeburg County Council (*Brown* Appellants). In the Georgetown County action, Richard A. Butts, individually and on behalf of a class (*Butts* Respondents), brought an identical action against Angela Christian, in her official capacity as Georgetown County Administrator; Miriam Mace, in her official capacity as Georgetown County Treasurer; Georgetown County; and Georgetown County Council (*Butts* Appellants). Both cases sought declaratory and monetary relief for the imposition of the respective county's road maintenance fees.

While these cases were pending, the General Assembly passed Act No. 236 of 2022 (the Act). Section 2(A) of the Act amended section 6-1-300(6) of the South Carolina Code (Supp. 2025) to allow counties to impose service or user fees that benefit the payer in the same manner those fees benefit the general public. Section 2(E) of the Act then retroactively applied that amendment to "any service or user fee imposed after December 21, 1996," including the road maintenance fees at issue in these cases.

After the Act took effect, *Butts* Respondents moved for partial summary judgment requesting a declaration that section 2(E) violates the South Carolina Constitution. The trial court granted *Butts* Respondents' motion, concluding section 2(E) violated Article I, section 8 of the South Carolina Constitution (Separation of Powers Clause).[1] *Brown* Appellants then moved for partial summary judgment seeking a declaration that section 2(E) is constitutional and dismissal of the claims against them. The trial court denied *Brown* Appellants' motion but certified its order for immediate appeal so it could be consolidated with the appeal in *Butts*. We certified and consolidated those appeals and now answer whether the trial court erred in (1) finding section 2(E) of the Act violated the Separation of Powers Clause; and (2) addressing the constitutionality of section 2(E) without first resolving statutory and procedural issues under the constitutional avoidance doctrine. We reverse and remand.

## I. Factual and Procedural Background

In 1987, Orangeburg County enacted ordinance 28-111, requiring owners of vehicles in the county to pay an annual $35 fee to the Orangeburg County Treasurer for road and bridge maintenance. That ordinance has been in effect since then and currently imposes a $50 fee per registered vehicle (Orangeburg County Road Maintenance Fee).

Likewise, in 2001, Georgetown County enacted Ordinance 2001-16, requiring owners of vehicles registered in Georgetown County to pay an annual $15 fee to the Georgetown County Treasurer for road and bridge maintenance. In 2008, Georgetown County raised the fee to $30 per registered vehicle through Ordinance 2008-81. Ten years later, Georgetown County again raised the fee to $50 per

---

[1] "In the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

registered vehicle through Ordinance 2018-18 (Georgetown County Road Maintenance Fee). The fee is currently $50 per registered vehicle.

In 2021, this Court issued *Burns v. Greenville County Council*, in which we interpreted section 6-1-300(6) of the South Carolina Code (1997) to require road maintenance fees like Greenville County's provide some benefit to the payer that is different from the benefit a member of the general public not paying the fee might receive for that fee to be considered a service or user fee and not an invalid tax under the statute. 433 S.C. 583, 586–88, 861 S.E.2d 31, 32–33 (2021).

On November 2, 221, following the *Burns* decision, *Brown* Respondents filed suit against *Brown* Appellants, seeking a declaratory judgment ruling that the Orangeburg County Road maintenance Fee was an invalid tax under *Burns*. *Brown* Respondents also sought monetary relief through: (1) an unjust enrichment claim against all *Brown* Appellants; (2) a claim for violation of section 8-21-30 of the South Carolina Code (2019)[2] against Stokes; and (3) a claim for the violation of the Separation of Powers Clause against all *Brown* Appellants. Three days later, *Butts* Respondents filed suit against *Butts* Appellants, seeking the same relief sought by the *Brown* Respondents.

As for the *Brown* case, *Brown* Appellants filed their answer, a motion to dismiss, and a motion for judgment on the pleadings on December 28, 2021. In their motion, *Brown* Appellants argued that (1) the declaratory judgment claim fell under the Revenue Procedures Act,[3] *Brown* Respondents had not exhausted their administrative remedies, and, thus, the trial court did not have jurisdiction over the claim; (2) the claim under section 8-21-30 did not apply to Stokes or road maintenance fees; (3) the unjust enrichment claim was barred by sovereign immunity; and (4) the constitutional claim was non-compensable. On June 30, 2022, Judge Edgar W. Dickson granted the motion as to the monetary claims and denied the motion as to the claim for declaratory relief. The parties then dismissed Orangeburg County Council and Harold M. Young without prejudice by consent. *Brown* Respondents filed a motion to reconsider on July 11, 2022.

As for the *Butts* case, *Butts* Appellants filed their answer, a motion to strike five allegations from the complaint, and a motion to dismiss on December 8, 2021. That

---

[2] "If any officer herein named shall charge any other fee or fees for any services herein mentioned, such officer shall be liable to forfeit ten times the amount so improperly charged, to be recovered by suit in the court of common pleas, by attachment or by sale when the penalty does not exceed twenty dollars."

[3] S.C. Code Ann. §§ 12-60-10 to -3390 (2014 & Supp. 2025).

motion to dismiss made identical arguments to the *Brown* motion to dismiss. The parties then stipulated to the dismissal of Angela Christian and Georgetown County Council on April 27, 2022. On May 23, 2022, Judge William H. Seals, Jr., summarily denied the motion to strike, but did not address the motion to dismiss.

On June 22, 2022, the Act was signed into law in response to this Court's interpretation of section 6-1-300(6) in *Burns*. The Act first amended the language of section 6-1-300(6) to require "[s]ervice or user fee[s]" to "be used to the benefit of the payers, even if the general public also benefits." 2022 Act No. 236, § 2(A). The Act then made section 2 "appl[y] retroactively to any service or fee imposed after December 21, 1996." 2022 Act No. 236, § 2(E).

On May 17, 2023, Chief Justice Donald W. Beatty issued an order assigning the *Brown* and *Butts* cases, along with all similar cases pending at the time of the Act's effective date to Judge Roger M. Young, Sr. This order vested Judge Young with "exclusive jurisdiction to hear and dispose of the above cases," and empowered him to "decide all matters pertaining to these cases" to "promote the effective and expeditious disposition of this litigation by uniform rulings and will conserve the resources of the parties, their counsel, and the judiciary."

On September 6, 2023, *Butts* Respondents filed an amended complaint requesting a declaration that section 2(E) of the Act is "unconstitutional and unlawful as applied to this case." Less than a month later, *Butts* Respondents moved for partial summary judgment seeking a ruling that the Act is unconstitutional as applied to their case. A hearing on that motion was held in April 2024. On June 25, 2024, Judge Young issued an order granting the motion for partial summary judgment, finding that "the retroactivity provision of section 2(E) of Act 236 is unconstitutional because, if applied to this case, it would overturn the Supreme Court's interpretation of section 6-1-300(6) in *Burns*." *Butts* Appellants filed a motion to alter or amend the judgment, which Judge Young denied. *Butts* Appellants then appealed to this Court.

Following Judge Young's order in *Butts*, *Brown* Appellants moved for summary judgment, for entry of declaratory judgment, and sought an order declaring that section 2(E) of the Act is constitutional and granting summary judgment on their mootness defense under Rule 54(B) SCRCP. In their motion, *Brown* Appellants argued that section 2(E) was constitutional and that *Lindsay v. National Old Line Insurance Company*, 262 S.C. 621, 207 S.E.2d 75 (1974)[4] and its progeny are no

---

[4] *See Lindsay*, 262 S.C. at 629, 207 S.E.2d at 78 (holding "a judicial interpretating of a statute is determinative of its meaning and effect, and any subsequent legislative

longer good law and should be overruled in light of United States Supreme Court precedent addressing separation of powers principles.  Judge Young denied that motion, finding that both "*Lindsay* and *Steinke*[5] remain the law in South Carolina," that section 2(E) is unconstitutional as a violation of the Separation of Powers Clause, and certifying the final judgment on that constitutional question to allow for an immediate appeal to be consolidated with the pending *Butts* appeal.

Following *Brown* Appellants' timely appeal, we granted a motion to consolidate the *Brown* and *Butts* appeals.

## II.    Standard of Review

The constitutionality and interpretation of a statute are questions of law that appellate courts review de novo.  *State Dairy Comm'n of S.C. v. Pet, Inc.*, 283 S.C. 359, 362, 324 S.E.2d 56, 57 (1984) ("[T]he constitutionality of the statute involves solely questions of law."), *overruled on other grounds by R.L. Jordan Co., Inc. v. Boardman Petroleum, Inc.*, 338 S.C. 475, 527 S.E.2d 763 (2000); *DomainsNewMedia.com, LLC v. Hilton Head Island-Bluffton Chamber of Com.*, 423 S.C. 295, 300, 814 S.E.2d 513, 516 (2018) ("The interpretation of a statute is a question of law." (quoting *Sparks v. Palmetto Hardwood, Inc.*, 406 S.C. 124, 128, 750 S.E.2d 61, 63 (2013))); *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 198, 821 S.E.2d 667, 669 (2018) ("We review questions of law de novo."). However, a "legislative Act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond a reasonable doubt . . . ." *Clarke v. S.C. Pub. Serv. Auth.*, 177 S.C. 427, 435, 181 S.E. 481, 484 (1935).  "The party challenging the validity of a statute bears the burden of proving it is unconstitutional." *Powell v. Keel*, 433 S.C. 457, 461, 860 S.E.2d 344, 346 (2021).

## III.    Section 2(E) of Act Number 236 of 2022's Constitutionality

For more than fifty years, this Court has read South Carolina's Separation of Powers Clause to prohibit the General Assembly from amending a statute and applying that amendment retroactively after a court has previously construed that statute. *Lindsay*, 262 S.C. at 629, 207 S.E.2d at 78 (holding that "a judicial interpretating of a statute is determinative of its meaning and effect, and any subsequent legislative

---

amendment to the contrary will only be effective from the date of its enactment and cannot be applied retroactively").

[5] *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 403, 520 S.E.2d 142, 157-58 (1999) (holding the General Assembly may not retroactively overrule this Court's interpretation of statutes).

amendment to the contrary will only be effective from the date of its enactment and cannot be applied retroactively"). Under that rule, the outcome here would be straightforward. In *Burns*, this Court interpreted section 6-1-300(6) to require that a service or user fee confer a benefit distinct from that received by the general public. 433 S.C. at 590, 861 S.E.2d at 34. The General Assembly then enacted the Act, amending section 6-1-300(6) to permit service or user fees that confer the same benefit on fee payers and the public at large, and expressly made that amendment retroactive. The question before us now is whether *Lindsay* continues to govern, rendering the Act's retroactivity provision unconstitutional and requiring application of *Burns*, or whether South Carolina's Separation of Powers Clause permits a more functional separation of powers analysis that allows the Act to apply to cases pending when it became effective. Appellants contend *Lindsay* and its progeny unduly restrict legislative power and are inconsistent with this Court's earlier acceptance of retroactive curative legislation in cases like *Green v. City of Rock Hill*, 149 S.C. 234, 252, 147 S.E. 346, 352 (1929). Appellants further argue that section 2(E) of the Act represents the exercise of core legislative authority to amend statutes and determine whether those amendments apply retroactively. We agree.

"Overruling precedent is never a small matter." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015). *Stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Id.* (quoting *Payne v. Tennessee*, 501 U.S. 808, 827–28 (1991)). Yet its force is at its lowest ebb in constitutional cases, where erroneous interpretations cannot readily be corrected by the legislature. *Kimble*, 576 U.S. at 456 ("What is more, *stare decisis* carries enhanced force when a decision . . . interprets a statute. Then, unlike in a constitutional case, critics of our ruling can take their objections across the street, and Congress can correct any mistake it sees."). For that reason, *stare decisis*, in the constitutional context, demands adherence to reasonably debatable decisions, but not those that are "wrong from the start." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022); *see McLeod v. Starnes*, 396 S.C. 647, 654, 723 S.E.2d 198, 202 (2012) ("'There is no virtue in sinning against light or persisting in palpable error, for nothing is settled until it is settled right . . . . There should be no blind adherence to a precedent which, if it is wrong, should be corrected at the first practical moment.'" (quoting *Smith v. Daniel Constr. Co.*, 253 S.C. 248, 255–56, 169 S.E.2d 767, 771 (1969) (Bussey, J., dissenting))). We conclude that *Lindsay* falls into the latter category for three reasons.

First, *Lindsay* is incompatible with South Carolina's constitutional structure. South Carolina's "rich and unique constitutional history has resulted in a system of government which does not lend itself to a neat compartmentalized, or 'cookie-cutter'

approach" to separation of powers. *S.C. Pub. Int. Found. v. S.C. Transp. Infrastructure Bank*, 403 S.C. 640, 651, 744 S.E.2d 521, 527(2013). "Accordingly, allowing some degree of overlap between the branches has been a feature of our government since the founding of the Republic." *Id.* 403 S.C. at 649, 744 S.E.2d at 526. "In South Carolina, this allowance of overlap between the branches is somewhat singular in the extensive involvement of the legislature in the powers of the executive and judiciary." *Id.* at 650, 744 S.E.2d at 526 (quoting James L. Underwood, *The Constitution of South Carolina, Volume I: The Relationship of the Legislative, Executive, and Judicial Branches* 13 (1986)).

Consistent with that history, we have long applied a functional separation of powers framework, although the Separation of Powers Clause speaks in stark terms. S.C. Const. Art. I, §8 ("[T]he legislative, executive, and judicial powers of the government shall be forever separate and distinct."). Under that framework, a separation of powers violation occurs when there is "significant interference by one branch of government with the operations of another branch." *State v. Langford*, 400 S.C. 421, 434, 735 S.E.2d 471, 478 (2012) (quoting 16A Am.Jur.2d *Constitutional Law* § 246). That is because "[s]eparation of powers does not require that the branches of government be hermetically sealed." *S.C. Pub. Int. Found.*, 403 S.C. at 649, 744 S.E.2d at 526 (quoting 16A Am.Jur.2d *Constitutional Law* § 244). Thus, because "some overlap of authority and some encroachment to a limited degree" is inherent in South Carolina's constitutional structure, *State Ex Rel. McLeod v. McInnis*, 278 S.C. 307, 313, 295 S.E.2d 633, 636 (1982), a separation of powers violation exists only when one branch of government interferes with the powers exclusively granted to a coequal branch. *Langford*, 400 S.C. at 435, 735 S.E.2d at 478.

The core powers of the branches are well settled: "[t]he legislative department makes the laws, the executive department carries the laws into effect, and the judicial department interprets and declares the law." *State ex rel. McLeod v. Yonce*, 274 S.C. 81, 84, 261 S.E.2d 303, 305 (1979). The General Assembly possesses "plenary power over all legislative matters, including "the sole prerogative to make policy decision[:] to exercise discretion as to what the law will be." *Hampton v. Haley*, 403 S.C. 395, 403, 743 S.E.2d 258, 262 (2013). South Carolina's courts, by contrast, hold the power to "resolv[e] cases . . . , the powers inherent in that function," *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 81, 753 S.E.2d 846, 853 (2014), and the power to "interpret[] and declare[] the law," *Yonce*, 274 S.C. at 84, 261 S.E.2d at 305. Tension may arise when legislation operates retroactively, but that tension alone does not establish a constitutional violation.

Retroactive legislation "looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect." *Retroactive Law*, BLACK'S LAW DICTIONARY (11th ed. 2019). Although such legislation has traditionally been viewed as suspect, South Carolina courts have long recognized the legislature's authority to enact retroactive curative or validating statutes for acts it could have authorized in the first instance. *See, e.g., Green*, 149 S.C. at 252, 147 S.E. at 352 (citation omitted) (citing the "well-settled general rule that the Legislature, by curative or validating statute which is necessarily retrospective in character and retroactive in effect, can 'validate any act which it might originally have authorized'"). Further, before *Lindsay*, we applied such statutes in both new matters and those "in which no final judgment ha[d] been rendered." *Id.* This historical practice reflects a functional understanding of separation of powers, even in the retroactivity context.

Second, *Lindsay* marked an unexplained departure from that settled approach. As stated, *Lindsay* held for the first time that the Separation of Powers Clause categorically bars retroactive legislation that contradicts a prior judicial interpretation. *Lindsay*, 262 S.C. at 629, 207 S.E.2d at 78 (finding that "a judicial interpretating of a statute is determinative of its meaning and effect, and any subsequent legislative amendment to the contrary will only be effective from the date of its enactment and cannot be applied retroactively"). We then reaffirmed the *Lindsay* Rule on several occasions. *See Steinke*, 336 S.C. at 403, 520 S.E.2d at 157–58 (1999); *Dykema v. Carolina Emergency Physicians*, *P.C.*, 348 S.C. 549, 558, 560 S.E.2d 894, 898 (2002); *Simmons v. Greenville Hosp. Sys.*, 355 S.C. 581, 587–88, 586 S.E.2d 569, 572 (2003); *JRS Builders, Inc. v. Neunsinger*, 364 S.C. 596, 600, 614 S.E.2d 629, 631 (2005).[6] However, none of these cases offered a textual, historical, or structural justification for abandoning decades of precedent. By contrast, dissents in those cases squarely identified the flaws.

In *JRS Builders, Inc.*, then Associate Justice Pleicones drafted a compelling dissent, explaining why the *Lindsay* Rule was not a legislative encroachment on judicial power, but a judicial encroachment on legislative power. *JRS Builders, Inc.*, 364 S.C. at 601–03, 614 S.E.2d at 632–33 (Pleicones, J. dissenting). That dissent first noted that "[w]hether a statutory amendment applies retroactively is ordinarily a matter of statutory construction and interpretation, not of constitutional law," and the "General Assembly has the authority to amend statutes, and to determine whether

---

[6] For an overview of these cases, *see* Domenic J. Sciortino, *A State of Affairs for a State in Need of Repairs: An Analysis of South Carolina's Separation of Powers Precedent*, 74 S.C. L. Rev. 671, 680–693 (2023).

the amended statute applies to matters occurring before its effective date." *Id.* at 602, 614 S.E.2d at 632–33. Justice Pleicones then noted that "the only constitutional limit on retroactivity in the civil context derives from due process guarantees, and from S.C. Const. art. I, § 4, prohibiting the passage of law that" impairs contractual obligations or divests vested property rights, recalling that our state constitution acts as a limit on legislative power and not a grant. *Id.* at 602, 614 S.E.2d at 633. Thus, Justice Pleicones concluded that it is not the "legislature's amendment of a statute in response to a judicial interpretation which offends [separation of powers], but rather our limitation on the General Assembly's authority to decide whether that statutory change should be given retroactive effect" because "the legislature has plenary power to amend statutes" as long as it does not violate constitutional limits. *Id.* (quoting *Boatwright v. McElmurray*, 247 S.C. 199, 207, 146 S.E.2d 716, 720 (1966)). Justice Pleicones correctly highlighted why the structure of South Carolina's Constitution and its division of powers among the branches does not support the *Lindsay* Rule, but our prior functional rule for retroactive legislation.

Third, though we may interpret the South Carolina Constitution as providing greater protections than the United States Constitution, the functional approach rejected by *Lindsay* remains the governing rule under the federal separation of powers doctrine. *State v. Forrester*, 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001) (stating "the federal Constitution sets the floor for individual rights while the state constitution establishes the ceiling"). Federal courts, applying separation of powers principles under the United States Constitution, recognize that Congress may amend statutes in response to judicial interpretations and may apply those amendments to pending cases, so long as final judgments are not disturbed. *See, e.g., Rivers v. Rodway Express, Inc.*, 511 U.S. 298, 313 (1994) (holding that Congress "has the power to amend a statute that it believes we have misconstrued" under its legislative powers" and "may even, within broad constitutional bounds, make such a change retroactive and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product"); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226–27 (1995) (clarifying the rules surrounding statutory retroactivity by noting "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly," but the legislature "may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was" (emphasis in original)); *Patchak v. Zinke*, 583 U.S. 244, 250 (2018) (plurality opinion) (reaffirming that Congress may not exercise the judicial power, but "[a]t the same time, the legislative power is the power to make law, and Congress can make laws that apply retroactively to pending lawsuits, even when it effectively ensures that one side wins"); *id.*

("Congress does not violate [separation of powers] when it changes the law" for pending cases.); *Bank Markazi v. Peterson*, 578 U.S. 212, 226–32 (2016) (same). That approach preserves the judiciary's authority to render final judgments while respecting the legislature's power to make and change the law.

Our pre-*Lindsay* cases followed the same principle. *See, e.g., Green*, 149 S.C. at 252, 147 S.E, at 352–53 (holding that the General Assembly had the power to amend laws previously found invalid by a court and apply that amendment retroactively to cure or validate the previous legislation and applying that rule in a case that had not reached a final judgment); *State v. Whitesides*, 30 S.C. 579, 586, 9 S.E. 661, 663 (1889) (finding the General Assembly could retroactively approve county actions that a court previously held invalid through legislation it had the constitutional authority to pass and applying that rule in a case that had not reached a final judgment); *State v. Neely*, 30 S.C. 587, 602–03, 9 S.E. 664, 665 (1889) (same); *Hodge v. Levi*, 80 S.C. 518, 61 S.E. 1009, 1009–10 (1908) (holding that the rule for the validity of a "healing or validating statute is that it must be confined to acts which the legislature could previously have authorized" and a legislature may take away previous requirements of a statute through retroactive amendment because "if the irregularity consists in doing some act which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law" (citation omitted)); *Dove v. Kirkland*, 92 S.C. 313, 321, 75 S.E.2d 503, 506 (1912) (same); *Segars v. Gomez*, 360 F. Supp. 50, 53 (D.S.C. 1972) (discussing retroactivity under South Carolina law and recognizing that the General Assembly "may ratify and validate any past act which it could originally have authorized provided it still has the power to authorize it, and its authorization does not impair vested rights").

Further, as Justice Pleicones pointed out in *JRS Builders, Inc.*, those pre-*Lindsay* cases adhere to the foundational rule that the South Carolina Constitution limits, rather than grants, legislative power. *See JRS Builders, Inc.*, 364 S.C. at 601–03, 614 S.E.2d at 632–33; *Segars-Andrews v. Judicial Merit Selection Comm'n*, 387 S.C. 109, 118, 691 S.E.2d 453, 458 (2010) ("The provisions of the state constitution are not a grant but a limitation of legislative power, so that the Legislature may enact any law not expressly, or by clear implication, prohibited by the state or federal constitution."). Our legislature has the "plenary power to amend statutes." *Boatwright*, 247 S.C. at 207, 146 S.E.2d at 720. Thus, because the South Carolina Constitution contains no general prohibition on retroactive legislation, apart from specific protections for vested rights, due process, contracts, ex post facto laws, and bills of attainder, the General Assembly retains the authority to give retroactive effect to statutory amendments within those bounds. *See* S.C. Const. Art. I, § 4 ("No bill of attainder, ex post facto law, law impairing the obligation of contracts, nor law

granting any title of nobility or hereditary emolument, shall be passed, and no conviction shall work corruption of blood or forfeiture of estate."); *McLure v. Melton*, 24 S.C. 559, 570 (1886) ("Nor is there any provision in the constitution of this State . . . forbidding the enactment of retrospective laws, or any provision which, in express terms, forbids the enactment of a law divesting vested rights, though certain safeguards are thrown around such rights by the provisions of sections 14 and 23 of article I. of the constitution.").

Allowing retroactive legislation in response to judicial decisions does not undermine the judiciary's core functions. Instead, it reflects the ordinary constitutional dialogue between the branches. That exchange is not a constitutional defect; it is a feature of our system that leads to better law for all South Carolinians.

Accordingly, we take this opportunity to overrule *Lindsay* and its progeny to the extent they hold that the Separation of Powers Clause prohibits the General Assembly from amending a statute and applying that amendment retroactively after a judicial interpretation. We now hold that the General Assembly may determine the retroactive application of statutory amendments so long as doing so does not disturb final judgments or violate an independent constitutional limitation.

Applying that rule here, section 2(E) of the Act expressly provides for retroactivity. The General Assembly established the statutory framework governing local governments' authority to impose taxes and fees and retains the power to modify that framework. *See* S.C. Code Ann. §§ 6-1-300(6), 6-1-330(A) (Supp. 2025). Additionally, we have been unable to find a provision in our constitution limiting the General Assembly's authority to alter that grant of power.[7] Although the legislature could not alter the final judgment in *Burns*, it may apply its amendment to cases pending when the Act took effect. We therefore hold that section 2(E) does not violate the Separation of Powers Clause and governs these cases.

We emphasize that our interpretation of section 2(E) leaves the final judgment in *Burns* entirely undisturbed, though the inartful drafting of this section brings it dangerously close to running afoul of another separation of powers principle. As stated, section 2(E) provides the Act "applies retroactively to *any* service or fee

---

[7] Respondents also assert due process and takings clause challenges to the Act as alternative sustaining grounds for the trial court's ruling. These arguments, however, were not meaningfully developed. We therefore decline to address them. *I'On, LLC v. Town of Mount Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("It is within the appellate court's discretion whether to address any additional sustaining grounds.").

imposed after December 21, 1996." 2022 Act No. 236, § 2(E) (emphasis added). Read literally, this language could encompass the Greenville County Road Maintenance Fee at issue in *Burns* and be understood to alter the final judgment in that case. Such a reading would raise profound separation of powers concerns, for it is axiomatic that the legislature may not disturb a court's final judgment.

We begin, however, with the settled presumption that "legislative enactments are constitutional" and we "uphold the validity of an enactment unless its repugnance to the constitution is clear beyond a reasonable doubt" because we assume the General Assembly acts in good faith and seeks to enact laws consistent with our constitution. *Climer v. Loftis*, 447 S.C. 25, 31, 923 S.E.2d 645, 648 (2025). That presumption informs the constitutional avoidance canon, which directs that when a statute is susceptible to both constitutional and unconstitutional interpretations, courts must adopt the construction that preserves the statute's validity. *Henderson v. Evans*, 268 S.C. 127, 132, 232 S.E.2d 331, 333–34 (1977). The canon rests on the common-sense premise that the General Assembly does not intend to transgress fundamental constitutional limits when a lawful construction is available.

We do not invoke this canon lightly, as constitutional avoidance does not allow us to rewrite statutes or avoid obvious constitutional violations. *Hodges v. Rainey*, 341 S.C. 79, 85, 341 S.E.2d 578, 581 (2000) ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."); *Boumediene v. Bush*, 553 U.S. 723, 787 (2008) (holding the courts have an obligation to construe a statute to avoid constitutional problems only "if it is fairly possible to do so"). Yet section 2(E)'s language admits of two plausible readings. One would attribute to the General Assembly an intent to violate a foundational principle of our constitutional structure, that a coordinate branch may not alter a court's final judgment, by unsettling the judgment in *Burns*. The other recognizes that, while broadly phrased, the statute does not clearly express any intent to reach final judgments at all. Faced with these competing interpretations, the constitutional avoidance canon requires us to adopt the construction that preserves the statute's validity and accords with the legislature's presumed intent to comply with the Separation of Powers Clause. *Crow v. McAlpine*, 277 S.C. 240, 242, 285 S.E.2d 355, 356 (1981) ("This Court has repeatedly held that all reasonable doubt must be resolved in favor of the constitutionality of the act. If a constitutional construction of a statute is possible, that construction should be followed in lie of an unconstitutional construction."); *see* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 249–50 (2012) (noting the constitutional doubt canon rests "upon a judicial policy of not interpreting ambiguous statutes to flirt with

constitutionality"). That choice is dispositive. Under it, *Burns* remains untouched, and—as our constitution requires—untouchable by the political branches.

So construed, section 2(E) applies retroactively to matters that remained pending when the Act took effect, and not to cases that had already reached final judgment, such as *Burns*. At the same time, the breadth of the language employed illustrates the importance of careful drafting when retroactive legislation approaches the constitutional boundary between the legislature's authority to enact laws and the judiciary's power to render final, binding judgments. Although we overrule *Lindsay* today, nothing in this opinion should be read to suggest that the General Assembly may enact legislation that disturbs a court's final judgment.

## IV. Conclusion

We overrule *Lindsay* and its progeny insofar as they impose a categorical separation of powers bar on retroactive legislation following judicial interpretation. South Carolina's functional separation of powers doctrine permits the General Assembly to amend statutes and determine their retroactivity, subject to express constitutional limits and the finality of judgments. Because section 2(E) of the Act falls within that authority, we reverse the trial court's orders and remand for further proceedings consistent with this opinion. In light of this disposition, we need not address Appellants' remaining arguments. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not review the remaining issues when its determination of a prior issue is dispositive of the appeal).

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES, and HILL, JJ., concur.**